# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JERRY W. WATTS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No.: 2:19-cv-01219-JHE |
| SCI FUNERAL SERVICES, LLC, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

On July 31, 2019, Defendants SCI Funeral Services, LLC ("SCI Funeral Services"), SCI Alabama Funeral Services, LLC ("SCI Alabama"), and Service Corporation International ("SCI," and collectively with the others, "Defendants") removed this action from the Circuit Court of Jefferson County, Alabama, to this court. (Doc. 1). Plaintiffs Jerry W. Watts and Allyne Watts ("Plaintiffs," or the "Watts") timely moved to remand the action. (Doc. 7). Defendants oppose remand, (doc. 11), and Plaintiffs have filed a reply in support, (doc. 15), as well as a supplemental reply, (doc. 20), to which Defendants have filed a sur-reply, (doc. 21). Plaintiffs have also moved for leave to amend their complaint to add a new defendant in place of a fictitious defendant identified in their complaint. (Doc. 14). Defendants also oppose that motion. (Doc. 19). For the reasons stated below, the motion to remand is **DENIED**, but the motion for leave to amend is **GRANTED**. Because the amendment causes this court to lose jurisdiction over the case, it is due to be **REMANDED** to the Circuit Court of Jefferson County.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

# I. Background and Procedural History[2]

Defendants provide funeral services. (Doc. 1-1 at 6, ¶ 6). Specifically, SCI Alabama does business as Elmwood Cemetery. (*Id.*). Plaintiff Jerry Watts owns a family burial plot in Elmwood Cemetery (the "Watts Plot") containing four spaces. (*Id.* at 7, ¶ 8). Jerry Watts' mother and father are buried in two of those spaces. (*Id.*). Two remain for Jerry Watts' use. (*Id.*, ¶ 9). On or about March 26, 2019, Plaintiffs' son Patrick passed away. (*Id.*, ¶ 10). When Jerry Watts arrived at Elmwood Cemetery to arrange for Patrick's burial, he found that a stranger, Alma Louise Ward ("Ward"), had been buried in one of the spaces in the Watts Plot. (*Id.*).

On these facts, Plaintiffs sued Defendants and twenty fictitious defendants for outrage, breach of contract, trespass, conversion, and negligence/wantonness.[3] Included in the list of fictitious defendants were the following:

> **No. 5**, whether singular or plural, person or persons, individual or individuals, entity or entities, who or which were responsible for and undertook to maintain proper placement of cemetery lot pins, correcting misplaced cemetery lot pins and maintaining and/or correcting cemetery plat maps of Elmwood Cemetery prior to the wrongful burial of Alma Louise Ward's remains in Plaintiff's burial space and/or Family Burial Plot, specifically, (Block 40, Lot 260, Space #1);
>
> [. . .]
>
> **No. 8**, whether singular or plural, person or persons, individual or individuals, entity or entities, who or which employed, hired, trained and supervised employees, agents, and or servants of Defendant whose conduct injured and damaged the Plaintiff;
>
> [. . .]

---

[2] The facts in this section are taken from Plaintiffs' complaint.
[3] The complaint also contains "counts" for agency and respondeat superior. (Doc. 1-1 at 28-31).

**No. 14**, whether singular or plural, person or persons, individual or individuals, entity or entities, who or which were the managers, owners, employees or who were charged with endowment care or undertook to insure Plaintiff's burial space and/or Family Burial Plot located in Lot 260 of Block 40,was maintained without invasion and/or desecration;

**No. 15**, whether singular or plural, person or persons, individual or individuals, entity or entities, who or which were the managers, owners, employees or who were charged with, responsible for or undertook to maintain and verify interment rights, contracts, lot cards, cemetery maps, burial records, blind checks and or lot pin placements before wrongfully burying Alma Louise Ward's remains in Plaintiff's burial space and/or Family Burial Plot (Block 40, Lot 260, Space #1);

**No. 16**, whether singular or plural, person or persons, individual or individuals, entity or entities, who or which were the managers, owners, employees or who trespassed upon and buried Alma Louise Ward's remains in Plaintiff's burial space and/or Family Burial Plot (Block 40, Lot 260, Space #1);

**No. 17**, whether singular or plural, person or persons, individual or individuals, entity or entities, who or which authorized destruction, invasion and desecration of Plaintiff's burial space and/or Family Burial Plot without written authorization of the Plaintiff;

(Doc. 1-1 at 4-5).

Defendants timely removed the action to this court, arguing that the complaint supports federal diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1).

## II. Analysis

Plaintiff's motion to remand and motion for leave to amend present two distinct but related issues. Because the resolution of the motion for leave to amend depends in part on whether the case was properly removed, the undersigned addresses the motion to remand first.

### A. Motion to Remand

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Federal courts are courts of limited jurisdiction, and there is a presumption

against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001).

Here, Defendants asserted in their notice of removal that this court has jurisdiction based on 28 U.S.C. § 1332. (Doc. 1). Under that statute, federal courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . . citizens of different States . . . ." 28 U.S.C. § 1332(a). Plaintiffs contend that their complaint does not facially support § 1332 jurisdiction because it both (1) includes non-diverse fictitious defendants and (2) lacks a basis for the court to conclude more than $75,000 is at stake. (Doc. 7). Objecting to both of these characterizations, Defendants argue fictitious parties' citizenship must be disregarded and the complaint is sufficient for the court to conclude the amount in controversy is met. (Doc. 11).

**1. Diversity of Citizenship**

To establish the propriety of removal via diversity jurisdiction under § 1332, every plaintiff must be diverse from every defendant—no plaintiff's citizenship may overlap with any defendant's citizenship. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). An individual is considered a citizen of the state of his domicile—that is, the last state in which he lived with an intention to remain there indefinitely. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).[1] "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). All other entities are deemed citizens wherever a member of that entity is a citizen. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195 (1990).

4

Plaintiffs concede at the outset that the removing defendants are diverse.[4] (Doc. 7 at 2). However, they claim that the fictitious defendants identified in their complaint should be taken into account in determining whether diversity of citizenship actually exists. (*Id.*). The problem for Plaintiffs is that 28 U.S.C. §1441(b) states that "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."

Plaintiffs point to *Delorenzo v. Wal-Mart Stores, Inc.*, No. 5:17-CV-01762-AKK, 2017 WL 6525009 (N.D. Ala. Dec. 21, 2017), but that case involved a plaintiff's motion for leave to amend to add non-diverse defendants, which the court analyzed under 28 U.S.C. § 1447(e). Although the § 1447(e) standard is relevant to Plaintiffs' motion for leave to amend and is discussed further below, it has no bearing on whether the court should consider their fictitious defendants in determining whether this case was removable. Indeed, the court in *Delorenzo* declined to consider the plaintiffs' contention that the case was never appropriately removed in the first place because of her description of fictitious defendants in light of its determination that remand was warranted under § 1447(e). *Id.* at *1. Plaintiffs' reliance on *Smith v. Dollar Gen. Corp.*, No. 1:16-CV-1673-SGC, 2017 WL 3492831 (N.D. Ala. Aug. 15, 2017), is flawed for substantially the same reason: it too is a case in which a plaintiff sought leave to join a non-diverse defendant (or, as the court found, identify a previously fictitious defendant), not a case in which a plaintiff alleged that her complaint was not removable in the first instance.

---

[4] Plaintiffs are both citizens of Alabama. (Doc. 1-1 at 5, ¶¶ 1-2). SCI Alabama, SCI Funeral Services, and SCI are all citizens of Texas. (*See* doc. 1-2).

The remainder of the law Plaintiffs cite is outdated and has since been abrogated. For example, Plaintiffs offer a blockquote from *McAllister v. Henderson*, 698 F. Supp. 865, 868-69 (N.D. Ala. 1988), in which the court cited *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), for the proposition that "unserved resident fictitious defendants may not be ignored on removal if the complaint's allegations are directed at all defendants without elaboration as to the particular role of any one defendant." (Doc. 7 at 5). But in "reaction to decisions like *Coker*," Congress amended § 1441 to explicitly provide that fictitious defendants' citizenship is disregarded. *Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 782 n.3 (11th Cir. 1989). Whatever guidance *McAllister* and *Coker* could offer to this particular issue has long since receded into the past. Accordingly, applying the law that controls the issue, diversity of citizenship existed at the time of removal.

**2. Amount in Controversy**

The party removing on § 1332 grounds also bears the burden of showing that the amount in controversy is greater than the $75,000 jurisdictional amount. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). This showing sometimes requires additional evidence, but when a defendant alleges that the face of the complaint itself supports removal, "the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010). If, as here, a plaintiff makes "an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Id.* In this assessment, the district court "need not suspend reality or shelve common sense." *Id.* Instead, the court may use "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially

6

apparent that the case is removable." *Id.* The court is not "bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought." *Id.* Furthermore, the court must consider the request for and availability of punitive damages unless it is apparent to a legal certainty that such cannot be recovered. *See, e.g., Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987); *Mitchell v. Carrington Mort. Serv.*, L.L.C., Case No. 5:16-cv-00833-CLS, 2016 WL 3570373, *3 (N.D. Ala. July 1, 2016). *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

The Watts assert that their "complaint does not state a specific amount of damages claimed." (Doc. 7 at 7). They argue Defendants' basis for removal is simply that "based on Plaintiffs' claims for punitive damages and emotional distress, the claims are automatically deemed to exceed $75,000.00 because the Plaintiffs did not formally disclaim any entitlement to more than $74,999.99 in their complaint . . . ." (*Id.*). But this is not quite Defendants' argument. Instead, they stated in their notice of removal (and maintain in their response to the motion to remand) that the nature of the Watts' claims, the categories of damages they claim (including punitive damages), *and* the fact that the Watts declined to stipulate to damages below the jurisdictional threshold all combine to support their characterization of the value of the Watts' claims.[5] (*See* doc. 1 at ¶¶ 17-21; doc. 11 at 7-16).

---

[5] While Defendants' arguments are as set out above, some of the citations in the notice of removal back up the Watts' characterization. Specifically, Defendants cite *Jones v. Hartford Fire Ins. Co.*, No. 12-AR-2879-S, 2013 WL 550419, at *1 (N.D. Ala. Feb. 7, 2013), for the proposition that "the moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive damages or emotional distress . . . the claim automatically is deemed to exceed $75,000 and becomes removable under 28 U.S.C. § 1332," and *Smith v. State Farm Fire and Cas. Co.*, 868 F. Supp. 2d 1333, 1335 (N.D. Ala. 2012), for the rule that "[P]laintiffs . . . who want to pursue

7

A reasonable examination of the complaint, with the benefit of judicial experience and common sense, supports Defendants' argument that the face of the complaint shows an amount in controversy exceeding $75,000. The Watts claim Defendants engaged in egregious, outrageous conduct: violating the sacred ground of a grave against the interests of a civil society, (doc. 1-1 at 6, ¶ 7), and "permanently insult[ing] and desecrat[ing]" the Watts Plot, (*id.* at 8, ¶ 12). Following the elements of the tort of outrage under Alabama law,[6] the Watts indicate that they have experienced "emotional distress so severe that no reasonable person should be expected to endure it" as a result of the "reckless, extreme, outrageous, atrocious and intolerable conduct" of Defendants, (*id.* at 9, ¶ 14), forcing them to undergo "shock, dismay, indescribable heartache, anger, frustration, humiliation, embarrassment, shame, guilt and grief that no reasonable person should be expected to endure at one of the worst moments a human being faces, i.e. burying their child," (*id.* at 13, ¶ 23). Furthermore, the Watts contend the injury is permanent and incurable, (*id.*

---

claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that plaintiff will never accept more. Otherwise, a plaintiff will find herself in a federal court . . . ." (Doc. 1 at ¶ 20). Neither case is binding on this court, and the rules in each case have routinely been criticized and rejected by other district courts for impermissibly shifting the burden to establish jurisdiction to the non-removing party. *See, e.g., Kumi v. Costco Wholesale Corp.*, No. 2:19CV442-MHT, 2019 WL 6359151, at *3 (M.D. Ala. Nov. 27, 2019) (rejecting both *Jones* and *Smith*); *Bennett v. Williams*, No. 7:17-CV-00602-LSC, 2017 WL 3781187, at *2 (N.D. Ala. Aug. 31, 2017) (noting that *Smith* is at odds with Supreme Court and Eleventh Circuit precedent); *Dunlap v. Cockrell*, 336 F. Supp. 3d 1364, 1368 (S.D. Ala. 2018 (*Smith* is a "distinctly minority view in this Circuit"). The undersigned also declines to follow these cases, and will instead place the burden where binding precedent says it belongs: on Defendants.

[6] "The elements of the tort of outrage are (1) that the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Jackson v. Alabama Power Co.*, 630 So. 2d 439, 440 (Ala. 1993).

at 10, ¶ 17), leaving them with "a permanently insulted, desecrated, destructed, used, burial space in their Family Burial Plot, for eternity," (*id.* at 12, ¶ 21). For each count of the complaint, the Watts seek damages for the following:

(a) Mental shock;

(b) Severe mental anguish and emotional distress resulting in physical suffering;

(c) Despair, bereavement, embarrassment, extended grief, frustration, anger, guilt, and humiliation;

(d) Invasion, permanent insult and desecration of the Watts Family Burial Plot;

(e) Invasion, permanent insult and desecration of the burial space to which Jerry W. Watts owns exclusive interment rights;

(f) Interference with Plaintiffs' right to burial of their son, Patrick, in the burial space of their choice;

(g) Plaintiffs have been forced to bury their son, Patrick, next to a stranger in their Family Burial Plot;

(h) Plaintiffs have had to live with and will be forced to live with the fact of knowing that another family member must be buried in a grave that was previously invaded by the remains of a stranger, permanently insulting and desecrating the grave, which cannot be undone or made right, all to the everlasting humiliation, grief, shock, guilt and anguish to the Plaintiffs separately and severally;

(i) Plaintiffs have had to live with and will be forced to live with the guilt of knowing the sacred remains of Ward must be disturbed, causing her family emotional distress, in order for Plaintiff to exercise his exclusive interment rights to the only remaining space in Plaintiffs' Family Burial Plot, which is permanently insulted and desecrated which cannot be undone or made right, all to the everlasting humiliation, grief, shock, guilt and anguish to the Plaintiffs separately and severally;

(j) Plaintiff, Allynne Watts has been caused to seek medical treatment;

(k) Plaintiff Allynne Watts has been caused to incur medical expenses

(l) Plaintiff, Jerry W. Watts has been caused to seek medical treatment;

(m) Plaintiff Jerry W. Watts has been caused to incur medical expenses;

9

(n) Plaintiffs have incurred and continue to incur expenses necessitated by the filing of this lawsuit.

(*Id.* at 14-27, ¶¶ 24, 32, 39, 45, 49). And the Watts seek compensatory and punitive damages for each count. (*Id.* at 14-31).

Even though the complaint does not contain a specific demand, it takes neither speculation nor guesswork to infer that the allegations in it support that the jurisdictional amount is in controversy. The complaint alleges (among other things) intentional, egregious conduct by Defendants, in one of the only three areas deemed so dire under Alabama law to permit a cause of action for such conduct. *See Callens v. Jefferson Cty. Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000) ("This Court has recognized the tort of outrage in three areas: (1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment."). Although not every tort of outrage claim is sufficient to permit the inference that more than $75,000 is at issue, the facts alleged in this case cover an intentional, permanent desecration of a burial plot.[7] Coupled with the Watts' punitive damages claims, this supports that the amount in controversy exceeds $75,000.

---

[7] Defendants cite three jury verdicts in funeral-related tort of outrage cases for the proposition that they inform a common-sense estimation of the amount of damages the Watts seek. (Doc. 11 at 14-15). Specifically, they point to *Gray Brown-Serv. Mortuary, Inc. v. Lloyd*, 729 So. 2d 280 (Ala. 1999) ($2 million verdict), *Akins Funeral Home, Inc. v. Miller*, 878 So. 2d 267 (Ala. 2003) ($200,000 and $450,000 awarded in compensatory damages to plaintiffs, with another $150,000 to each in punitive damages), and *Crestview Mem'l Funeral Home, Inc. v. Gilmer*, 79 So. 3d 585 (Ala. 2011) ($350,000 compensatory damages award plus $3.5 million punitive damage award). While those cases presumably illustrate the high end of outrage verdicts, they are of limited utility here because none of them are factually similar (as the Watts note, (*see* doc. 15 at 5)). Each case involves improper conduct directly involving the body of the plaintiffs' deceased relative. Common sense suggests that desecrating or improperly disposing of the body of a deceased relative is a more egregious sub-category within funeral-related tort of outrage claims than the facts here.

Additionally, the Watts have declined to disclaim damages exceeding $75,000. While "a refusal to stipulate *standing alone* does not satisfy [the defendant's] burden of proof on the jurisdictional issue," *Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (emphasis added), a refusal to stipulate is *relevant* to the issue, and courts routinely consider it as such. *See, e.g., Jones v. Novartis Pharm. Co.*, 952 F. Supp. 2d 1277, 1287 (N.D. Ala. 2013) (considering refusal to stipulate to damages less than the jurisdictional amount as one factor among several counseling against remand); *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1380 (M.D. Fla. 2009) ("[A] plaintiff's refusal to stipulate or admit that she is not seeking damages in excess of the requisite amount should be considered when assessing the amount in controversy."); *Townsend v. Win-Holt Equip. Corp.*, No. 2:17CV218-MHT, 2018 WL 4608476, at *2 (M.D. Ala. Sept. 25, 2018). Combined with the factual allegations in the complaint and the nature of the damages sought, the undersigned concludes it is more likely than not that the amount in controversy is sufficient to confer diversity of citizenship jurisdiction.

The Watts compare this case to *McAlpine v. Home Depot U.S.A., Inc.*, No. 2:15-CV-0191-JEO, 2015 WL 2238115, (N.D. Ala. May 12, 2015), a slip-and-fall action in which the plaintiff (also represented by the Watts' counsel) successfully moved to remand the case to state court. (Doc. 7 at 10-11). There, the court found the claimed damages in the complaint—for hip surgery, five days' hospitalization, future medical bills, pain and discomfort, mental anguish permanent impairment, loss of consortium, and punitive damages—insufficient, standing alone, to prove the jurisdictional amount in controversy by a preponderance of the evidence. *McAlpine*, 2015 WL 2238115 at *4-5. Notably, the *McAlpine* court contrasted the "instances where [a] court would find the jurisdictional amount is satisfied in the absence of a specific demand" from the allegations before it, which included few details and circumstances not as "egregious and substantial" as cases

11

in which the complaint's allegations were sufficient. *Id.* at *5. Here, as recounted above, the complaint does contain "egregious and substantial" allegations of conduct that compel the inference that the amount in controversy exceeds $75,000.

In their reply, the Watts also reference *Hinton, et al. v. SCI, et al.*, a state court case in which their counsel represented plaintiffs against Defendants for substantially the same conduct here. (Doc. 20 at 3). This case is discussed further below, but for remand purposes, the Watts state that they were only awarded $45,000.00 in compensatory damages at arbitration. (*Id.* at 3-4). They also point to defense counsel's argument in that case that the conduct at issue was "just an innocent mistake," and Defendants' similar position in their answer in this case. (*Id.* at 4). None of this is relevant. First, "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka*, 608 F.3d at 751. So while the plaintiffs in *Hinton* ultimately received an amount below this court's jurisdictional threshold, it does not follow that the Watts are only putting that amount at issue here. In fact, as Defendants note, the plaintiff in *Hinton* sought $650,000 at arbitration. (Doc. 21 at 2-3; doc. 20 at 13). If anything, the Watts' submission of the arbitration award bolsters the conclusion that more than $75,000 is in controversy in this case. To the extent the Watts point to Defendants' defenses, justifications, or excuses, those have no bearing on the only concern here: what the *Watts themselves* are alleging.

Since the complaint supports that both the diversity of citizenship and amount in controversy requirements are met, this action was properly removed from state court. Accordingly, the motion to remand is due to be denied.

### B. Motion for Leave to Amend

Having determined the action was properly removed to this court, the undersigned turns to the Watts' motion for leave to amend, (doc. 14). That motion seeks to substitute Alabama resident Phyllis Pesseackey ("Pesseackey"), who allegedly managed Elmwood Cemetery on the date when Ward was buried in the Watts Plot, for the fictitious defendants identified above as #5, #8, #14, #15, #16, and #17. (Doc. 14). The Watts contend Pesseackey was not identified in Defendants' initial disclosures—and, in fact, that Defendants refused to disclose the names of its non-diverse employees—but that they discovered Pesseackey's identity through social media. (*Id.* at 2-3). Defendants sidestep the issue of their initial disclosures, instead insisting the Watts' counsel already knew of Pesseackey from prior lawsuits and intend this amendment solely to defeat federal jurisdiction. (Doc. 19).

The standard under which the court proceeds is set out in 28 U.S.C. § 1447(e): "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."[8] "A district court, when faced with an amended pleading adding a nondiverse defendant in a case removed based on diversity jurisdiction, should scrutinize that amendment more closely than an ordinary amendment and should deny leave to amend unless strong equities support the amendment." *Smith v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1281 (N.D. Ala. 2002) (citation and internal quotation marks omitted). Courts generally consider "(1) the extent to which

---

[8] The Watts argue they are merely identifying fictitious defendants, not joining a new party. (Doc. 14 at 4-5). There is no need to explore the merits of the Watts' argument since the undersigned finds (as set out below) that joinder and remand is appropriate under the more restrictive standard of § 1447(e), whose application Defendants advocate.

13

the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities." *Sexton v. G & K Servs., Inc.*, 51 F. Supp. 2d 1311, 1312 (M.D. Ala. 1999) (citing *Hensgens v. Deere and Co.,* 833 F.2d 1179, 1182 (5th Cir. 1987), *cert. denied*, 493 U.S. 851 (1989)).[9] "[I]n balancing the equities, the parties do not start out on an equal footing . . . because of the diverse defendant's right to choose between a state or federal forum." *Osgood v. Discount Auto Parts, LLC*, 955 F. Supp. 2d 1352, 1355 (S.D. Fla. 2013) (citations omitted).

### 1. Defeating Federal Jurisdiction

This factor looks to both the strength of the plaintiff's claim against the non-diverse defendant and whether the plaintiff knew or should have known of the non-diverse defendant's existence at an earlier time. *Smith*, 229 F. Supp. 2d at 1280. This is the only factor the Watts address to any real extent (although, as discussed below, it overlaps with the second factor). (*See* doc. 20 at 2).

Defendants argue the Watts' post-removal identification of Pesseackey, a non-diverse party they knew or should have known was a proper defendant to this action, "strongly indicates

---

[9] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). However, there is some question about whether *Hensgens* itself is binding, given that it predates the enactment of § 1447(e) and that statute's apparent grant of complete discretion to a district court to permit an amendment. *See Lawson v. Wal-Mart Stores E., L.P.*, No. 2:17-CV-1885-VEH, 2018 WL 684839, at *2 (N.D. Ala. Feb. 2, 2018) (discussing the application of *Hensgens* in the Eleventh and Fifth Circuits). Nevertheless, courts in this circuit have generally considered the *Hensgens* factors as instructive in exercising discretion under § 1447(e). *See Delorenzo v. Wal-Mart Stores, Inc.*, No. 5:17-CV-01762-AKK, 2017 WL 6525009, at *2 n.3 (N.D. Ala. Dec. 21, 2017). The undersigned considers them as well.

that the purpose of the plaintiff's amendment is to defeat federal jurisdiction." (Doc. 19 at 7) (quoting *Smith*, 229 F. Supp. 2d at 1280). Defendants' evidence regarding the Watts' knowledge of Pesseackey is not as robust as they make it out to be. Although it is apparent that the Watts' counsel knew of Pesseackey's existence and affiliation with Elmwood Cemetery when they filed the *Hinton* lawsuit, what is also apparent is that Pesseackey is retired, and has been since July 2017, (*see* doc. 14 at 54)—long before the death of the Watts' son in March 2019. So while the Watts' counsel may have known Pesseackey was the manager of Elmwood Cemetery in August 2016 (when the events relevant to the *Hinton* lawsuit took place, (*see* doc. 19-1)), it does not necessarily follow they knew she was still the manager of Elmwood Cemetery in late January 2017, when Ward was buried in the Watts Plot. Although Defendants have supplied the Watts' counsel's January 2019 deposition notice of Pesseackey in another state court case, (doc. 19-2), that case also dates from 2016.

Further complicating the issue is that Defendants did not include Pesseackey on their August 15, 2019 initial disclosures as a person likely to have discoverable information. This makes little sense given their argument that the Watts should have known prior to removal that Pesseackey was a potential defendant, and Defendants do not even attempt to explain this omission in their response. While the undersigned will not infer that this was an effort by Defendants to defeat remand (as the Watts allege, (*see* doc. 14 at 2)), it does provide at least some reason why the Watts did not name Pesseackey as a defendant until now. The undersigned declines to conclude that the Watts should have known to name Pesseackey beforehand when Defendants declined to identify her in their initial disclosures and have identified no other document in *this* case that would support the Watts' knowledge.

15

Defendants also contend the Watts' case against Pesseackey is weak because "there is no 'claim' in [the amended] Complaint for which the linchpin is a cause of action against Mrs. Pesseackey." (Doc. 19 at 9). This is a stronger contention, because the Watts' proposed amendment does not contain any specific factual allegations against Pesseackey. (*See* doc. 14 at 58-60). Further, the Watts offer nothing to bolster the strength of their case against Pesseackey. That said, it is not a stretch to conclude that Pesseackey is more than a peripheral actor given that the Watts intend for her to be substituted for Fictitious Defendant #17, who "authorized destruction, invasion and desecration" of the Watts Plot without the Watts' approval. (*See* doc. 14 at 14). Assuming the Watts can demonstrate Pesseackey did exactly that, their case against her is strong. Thus, it does not appear that Pesseackey is simply being "bootstrap[ped]" into the complaint, as Defendants assert, (doc. 19 at 9). Accordingly, the undersigned finds this factor weakly supports granting leave to amend.

**2. Dilatory Amendment**

Defendants contend there was no reason for the Watts to wait to add Pesseackey as a defendant, given their prior knowledge. (Doc. 19 at 10). This presupposes the Watts' knowledge that Pesseackey was an appropriate defendant, which is essentially Defendants' argument as to the first factor. For the same reasons stated above, this argument is misplaced. Furthermore, Defendants' initial disclosures, which omitted Pesseackey, were served on August 15, 2019. (Doc. 14 at 48). The Watts state their counsel investigated further following Defendants' initial disclosures. (*Id.* at 3). The Watts filed their motion to amend less than two weeks after service of the initial disclosures, and only about two months after filing their complaint itself. (*See* doc. 14). None of this supports the Watts waited an unreasonable—or unexplainable—amount of time to

add Pesseackey. The undersigned finds the Watts were not dilatory in making their amendment, and that this factor supports amendment.

### 3. Prejudice to the Plaintiffs

Under this factor, the court considers "whether the plaintiff will be significantly injured" if the amendment is denied. *Smith*, 229 F. Supp. 2d at 1282. Defendants argue *respondeat superior* liability already provides an avenue for the Watts to recover for Pesseackey's actions and, in any event, whatever burden the Watts would face in suing Pesseackey separately in state court (to the extent they would do so) is minimal in light of the other factors. (Doc. 19 at 11-12). Although the first of these arguments is somewhat persuasive in that Pesseackey may not be strictly necessary as a party in this action for the Watts to obtain full relief, the second is not, given that the other factors weigh narrowly in favor of amendment. Courts have frequently considered the potential time and money a plaintiff would have to expend in litigating nearly-identical, parallel actions as an injury to the plaintiff under this factor. *See Ibis Villas at Miami Gardens Condo Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 799 F. Supp. 2d 1333, 1336 (S.D. Fla. 2011) (weighing this factor in favor of denying joinder when denial would not lead to parallel proceedings). *Sexton*, 51 F. Supp. 2d at 1314 (noting a plaintiff faces a burden in prosecuting parallel suits, but finding the burden in that case insufficient; the other factors weighed strongly against amendment); *Delorenzo*, 2017 WL 6525009, at *3 (finding an injury to plaintiff when claims substantially overlapped and weighing the factor slightly in favor of amendment). Here, any lawsuit against Pesseackey would be parallel to and entirely duplicative of this one, and it would waste judicial resources in addition to the Watts' resources. *See Hensgens*, 833 F.2d at 1182 (noting "the danger of parallel federal/state proceedings with the [risk] of inconsistent results and the waste of judicial

17

resources"). This is enough prejudice to the Watts that this factor weighs slightly in favor of amendment.

### 4. Other Equitable Concerns

Defendants first note as to this factor that the parties do not start out on an equal footing, (doc. 19 at 12), but this simply seems to restate the standard the court is applying, *see Sexton*, 51 F. Supp. 2d at 1313, which puts a thumb on the scale in favor of denying leave to amend. It is not an independent equitable concern suggesting leave to amend should be denied. Defendants also suggest the Watts should "not be rewarded" with leave to amend for their failure to address the appropriate standard in their motion to amend. (Doc. 19 at 12). Given that the Watts' argument goes to a plausible resolution of their motion—i.e., the court could apply the standard they advance, as other courts have done, *see, e.g., Taylor v. Alabama CVS Pharmacy, L.L.C.*, No. 7:16-CV-1827-TMP, 2017 WL 3009695 (N.D. Ala. July 14, 2017)—the undersigned declines to find this an equitable concern weighing against amendment.

Another equitable concern, however, does support amendment. This case is still relatively new and has been in this court only a few months. Little of substance has happened apart from the battle over the appropriate forum for the action. This suggests remand will have few if any consequences for Defendants apart from losing their right to a federal forum. Balancing the equities, although the question is ultimately close, the undersigned concludes that the factors identified above outweigh Defendants' interest in a federal forum, and that the amendment should be permitted.

Having determined that leave to amend should be granted, this court may not retain jurisdiction over the Watts' claims. *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998). Accordingly, this action is due to be remanded.

### III. Conclusion

For the reasons stated above, the Watts' motion to remand, (doc. 7), is **DENIED**. However, the Watts' motion for leave to amend, (doc. 14), is **GRANTED**. Since the court may not retain jurisdiction over the case after the amendment, this case is due to be **REMANDED** to the Circuit Court of Jefferson County, Alabama. A separate order will be entered.

DONE this 18th day of March, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE